UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
IN RE THE BEAR STEARNS COMPANIES,      :
INC. SECURITIES, DERIVATIVE, AND ERISA :   Master File No.:
LITIGATION                             :   08 M.D.L. 1963 (RWS)
                                       :
This Document Relates To:              :   ECF Case
      Securities Action, No. 08 Civ. 2793 (RWS)  :
                                       :
                                       :
                                       :
                                       :
------------------------------------------------------------------ x
BRUCE S. SHERMAN,                      :
                                       :   Index No.:
                          Plaintiff,   :   09 Civ. 8161 (RWS)
                                       :
      v.                               :
                                       :
BEAR STEARNS COMPANIES INC.,           :
JAMES CAYNE, and WARREN SPECTOR,       :
                                       :
                          Defendants.  :
                                       :
                                       :
------------------------------------------------------------------ x


**PLAINTIFF BRUCE S. SHERMAN'S MEMORANDUM OF LAW
IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE EVIDENCE CONCERNING THE SEC'S OFFICE OF
INSPECTOR GENERAL, OFFICE OF AUDITS' REPORT,
"SEC OVERSIGHT OF BEAR STEARNS AND RELATED ENTITIES"**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ....................................................................................................................... 5

I.   THE OIG REPORT IS ADMISSIBLE AS A PUBLIC RECORD UNDER FEDERAL
     RULE OF EVIDENCE 803(8) ......................................................................................... 5

     A.   Defendants Failed to Rebut the Presumptive Admissibility of the OIG Report ............... 5

          1.   The OIG Report contains factual findings ................................................. 6

          2.   The OIG Report is based on a legally authorized investigation ................................ 7

     B.   Defendants Failed to Rebut the Presumptive Trustworthiness of the OIG Report ............ 8

          1.   The OIG Report was intended to analyze the factors leading to Bear's collapse ......... 8

          2.   The OIG Report is not anonymous ......................................................... 10

          3.   The OOA and its expert have the appropriate skill and expertise ............................ 11

          4.   The SEC largely embraced the findings of the OIG Report ..................................... 13

          5.   Defendants can introduce their own evidence to rebut the factual findings of the
               OIG Report ................................................................................. 14

II.  DEFENDANTS HAVE FAILED TO SHOW THAT THE OIG REPORT SHOULD BE
     EXCLUDED AS PREJUDICIAL UNDER RULE OF EVIDENCE 403 ............................ 15

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*Beech Aircraft Corp. v. Rainey*,
    488 U.S. 153 (1988).................................................................................7

*Bridgeway Corp. v. Citibank*,
    201 F.3d 134 (2d Cir. 2000)....................................................5, 7, 11, 14

*City of New York v. Pullman*,
    662 F.2d 910 (2d Cir. 1981)...........................................................16

*Coughlin v. Tailhook Association, Inc.*,
    No. CV-S-93-044-PMP (RJJ), 1994 WL 780904 (D. Nev. Sept. 2, 1994).................10, 11

*Gentile v. County of Suffolk*,
    129 F.R.D. 435 (E.D.N.Y. 1990) ...........................................8, 11, 15

*Gentile v. County of Suffolk*,
    926 F.2d 142 (2d Cir. 1991).............................................................8

*In re MetLife Demutualization Litig.*,
    262 F.R.D. 217 (E.D.N.Y. 2009) ....................................................7, 14

*Miranda-Ortiz v. Deming*,
    No. 94 CIV 476 CSH, 1998 WL 765161 (S.D.N.Y. Oct. 29, 1998) ................8

*Paolitto v. John Brown E. & C. Inc.*,
    151 F.3d 60 (2d Cir. 1998)...........................................................15

*Papyrus Tech. Corp. v. N.Y.S.E., LLC*,
    653 F. Supp. 2d 402 (S.D.N.Y. 2009)..............................................11

*S.E.C. v. Pentagon Capital Mgmt. PLC*,
    722 F. Supp. 2d 440 (S.D.N.Y. 2010)..........................................5, 7, 8

*S.E.C. v. Pentagon Capital Mgmt.*,
    No. 08 Civ. 3324, 2010 WL 985205 (S.D.N.Y. Mar. 17, 2010) ...............9, 10

*Sullivan v. Dollar Tree Stores, Inc.*,
    623 F.3d 770 (9th Cir. 2010) ...........................................................10

*United States v. Figueroa*,
    618 F.2d 934 (2d Cir. 1980)...........................................................15

*United States v. Nelson*,
    365 F. Supp.2d 381 (S.D.N.Y. 2005).........................................................................15, 16

## Rules and Statutes

17 CFR 200.16a .....................................................................................................................7

5 U.S.C. app. § 4(a)(1)......................................................................................................3, 7

Fed. R. Evid. 403 .....................................................................................................1, 2, 14, 15

Fed. R. Evid. 803(8)......................................................................................1, 2, 5, 7, 8, 11, 15

Plaintiff Bruce S. Sherman respectfully submits this memorandum of law in support of his opposition to Defendants' motion to exclude the Securities and Exchange Commission, Office of Inspector General, Office of Audits' September 25, 2008 report entitled "SEC's Oversight of Bear Stearns and Related Entities: The Consolidated Supervised Entity Program" (the "OIG Report").  This public report is admissible at trial, and the Court should not preclude Sherman from relying on it to oppose Defendants' motion for summary judgment or for any other permissible purpose.

## PRELIMINARY STATEMENT

Sherman intends to use the OIG Report, a thoroughly researched report prepared pursuant to a congressional and statutory mandate, in conjunction with other evidence in order to prove Defendants' fraud.  Defendants have moved to exclude the OIG Report as untrustworthy, but they have failed to rebut its presumptive admissibility under Federal Rule of Evidence 803(8) and have failed to show that the Court should exclude it under Federal Rule of Evidence 403.

The product of months of well-considered evidentiary review and analysis, the OIG Report presents data, facts, and conclusions about the factors that contributed to Bear's collapse. Shortly after the Report was completed, the SEC Inspector General confirmed in congressional testimony that these Bear-specific findings reflect, *inter alia*, the intended purpose of the OIG Report.  The other purpose of the OIG Report was to provide an analysis of whether the SEC Division of Trading and Markets properly oversaw Bear and other investment banks.  Both of these objectives required the OIG Report's authors to make factual findings about Bear's financial and management practices.

In attempt to hide from the condemning evidence contained in the Report, Defendants claim that it is untrustworthy and should be excluded under Rule 803(8).  In support of their argument, Defendants advance a litany of threadbare protests, including that the Report is

somehow "anonymous;" the credentialed auditors at the SEC OIG and its renowned outside technical expert lacked skill; the interested managers scrutinized by the Report predictably criticized the Report's findings; and there was no adversarial hearing prior to its publication. Each of these arguments is baseless: the independent and specialized SEC Office of Inspector General, Office of Audits institutionally authored the Report; the Report's authors  identified and equipped its well-credentialed expert to reach grounded findings of fact; notwithstanding some discontent from those whom the OIG Report criticized, its results were widely embraced and acknowledged to be well-considered; and the lack of an adversarial hearing is not grounds for exclusion under Rule 803(8).

Realizing that they cannot meet Rule 803(8)'s high burden for excluding an otherwise-admissible report, Defendants ask this Court to exclude the OIG Report as prejudicial under Rule 403.  But Rule 403 does not give Defendants grounds to exclude evidence merely because it tends to prove Sherman's case.  Moreover, the probative value of the OIG Report is supported by other evidence gathered in discovery.  Finally, any risk of prejudice can be mitigated by precautionary measures.

## STATEMENT OF FACTS

On April 2, 2008, Senator Charles E. Grassley requested that the Securities and Exchange Commission ("SEC"), Office of Inspector General ("OIG") conduct an audit "relevant to issues surrounding Bear Stearns."  Borner Decl. Ex. 1, OIG Rep. at 55 (Letter from Sen. Charles E. Grassley, Ranking Member, U.S. Senate Comm. on Fin., to Hon. David Kotz, Inspector Gen., U.S. SEC (Apr. 2, 2008) [hereinafter Grassley Letter]).[1]  As part of the audit, Senator Grassley requested an analysis of the SEC Division of Trading and Markets ("T&M"), the arm of the SEC

---

[1] All citations to "Borner Decl." refer to the August 17, 2015 Declaration of Meredith Borner and accompanying exhibits (Dkt. No. 106).

responsible for regulating Bear, in addition to an audit of "the adequacy of any reviews [it] conducted regarding Bear Stearns." *Id.*  Separately, Senator Grassley requested that the OIG investigate a decision made by the SEC Enforcement Division in 2007 not to pursue an enforcement action against Bear for "improperly valuing mortgage-related investments." *Id.* at 54.  That separate investigation and the resulting report are not relevant to this case.

The audit requested by Senator Grassley was conducted by the SEC OIG Office of Audits ("OOA").  The SEC OIG and OOA are tasked by statute to "provide policy direction for and to conduct, supervise, and coordinate audits and investigations relating to the programs and operations" of the SEC.  *See* Inspector General Act of 1978, 5 U.S.C. app. § 4(a)(1).  To carry out its statutory mandate, the OOA is staffed by credentialed auditors and investigators, and it often hires outside consultants to assist with matters requiring additional technical expertise. Borner Decl. Ex. 6, U.S. SEC, OIG Office of Audits Overview, www.sec.gov/about/offices/oig/inspector_general_ audits.shtml.  The OIG conducts audits pursuant to rigid quality controls, including Generally Accepted Government Auditing Standards and the Council of the Inspectors General on Integrity and Efficiency's Quality Standards for Inspections and Evaluations.  *Id.*

In September 2008, upon the conclusion of the audit, the OOA issued a comprehensive report entitled "SEC's Oversight of Bear Stearns and Related Entities: The Consolidated Supervised Entity Program" (the "OIG Report"), which is the Report at issue in Defendants' motion.  As Hon. David Kotz, Inspector General of the SEC, stated in testimony before the House Committee on Financial Services, the OIG Report "provided a detailed examination of the adequacy of the Commission's monitoring of Bear Stearns, *including the factors that led to its collapse.*"  Henken Decl. Ex. 7, *Assessing the Madoff Ponzi Scheme & Regulatory Failures:*

*Hearing Before the Subcomm. on Capital Mkts., Ins., & Gov't Sponsored Enterprises of the H. Comm. on Fin. Servs.*, 111th Cong. 2 (2009) (statement of H. David Kotz, SEC Inspector Gen.) [hereinafter "Kotz Testimony"], at 4-5 (emphasis added).[2]  "The final report consists of 26 recommendations that are addressed primarily to the Division of Trading and Markets[.]" Borner Decl. Ex. 1, OIG Rep. at ii.  Overall, "responsible management officials agreed with 21 out of 26 recommendations" and T&M itself "concurred with 20 of 23 recommendations addressed to them."  *Id.*  The SEC Chairman, Christopher Cox, found all 26 of the Report's recommendations to be "well-considered and worthy of support."  *Id.* at 81.

The OIG Report is not anonymous.  It was institutionally authored by OOA staff, who comprise a discrete and independent office of the SEC OIG.  The OIG Report also identifies the well-credentialed expert retained to provide technical advice and guidance, Professor Albert S. (Pete) Kyle.  *Id.* at vii, 72-73.  Professor Kyle, who has a Ph.D. in economics from the University of Chicago, is a highly regarded market economist with a career in the field that spans 40 years. *See id.* at vii, 56-69.  He is "a renowned expert on many aspects of capital markets, with a particular focus on market microstructure."  *Id.* at viii.

The OIG Report is well-supported and thoroughly researched.  It is the result of five months of fieldwork, including "weekly and sometimes daily conversations" with Bear's regulators, including senior T&M officials responsible for regulating Bear, on all issues.  *Id.* at 116.  In drafting the Report, the OIG's auditors worked closely with Professor Kyle, who "spent countless hours reviewing detailed notes and memoranda that [T&M] staff had prepared during the time periods pertinent to the audit and conversed in detail with [Division of Trading and

---

[2] All citations to "Henken Decl." refer to the concurrently filed October 13, 2015 Declaration of Matthew Henken and accompanying exhibits.

Markets] management and staff."  (*Id.*)  Further, the OIG Report reflects substantive input from T&M.  *See id.* at 117.

As part of the audit, Professor Kyle reviewed T&M's internal documents and "[f]rom this information . . . analyzed [Bear's] financial data, holdings, risk management strategies, [and] tolerance for risk and assessed the adequacy of [Bear's] filings."  *Id.* at vii.  "In particular, Professor Kyle analyzed Bear Stearns's capital, liquidity, and leverage ratios, access to secured and unsecured financing, and its compliance with industry and worldwide standards such as the Basel Standards."  *Id.* at vii-viii.  "Professor Kyle analyzed how [T&M] supervised or oversaw Bear Steams' mortgage-backed securities portfolio, its use of models to measure risk, the adequacy of its models, its model review process, the relationship between its traders and risk management department, and its risk-management scenarios."  *Id.* at viii.  "Professor Kyle also examined how [T&M] supervised Bear Steams' internal operations, including its funding of two prominent hedge funds that collapsed in the summer of 2007."  *Id.*  Based on this thorough analysis, the OIG Report includes findings regarding various factors that "could have contributed" to Bear's collapse.  *See, e.g.*, *id.* at 113.

## ARGUMENT

### I.  THE OIG REPORT IS ADMISSIBLE AS A PUBLIC RECORD UNDER FEDERAL RULE OF EVIDENCE 803(8)

#### A.  Defendants Failed to Rebut the Presumptive Admissibility of the OIG Report

Defendants concede that the OIG Report is a "public record."  Defs. Mot. to Exclude at 10.  Under Rule 803(8), a public record is "presumptively admissible" in a civil action if it (1) contains "factual findings" and (2) is "based upon an investigation made pursuant to legal authority."  *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000); *S.E.C. v. Pentagon Capital Mgmt. PLC*, 722 F. Supp. 2d 440, 442 (S.D.N.Y. 2010) (Sweet, J.) (same); *and see* Fed.

R. Evid. 803(8) (providing an exception to the hearsay rule for a "record or statement of a public office" that "sets out (i) the office's activities; (ii) a matter observed while under a legal duty to report . . . ; or (iii) in a civil case . . . , factual findings from a legally authorized investigation" so long as "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness").

### 1.    *The OIG Report contains factual findings*

The OIG Report meets the first criterion for admissibility under Rule 803(8)—whether the evidence contains "factual findings"—because it provides data, facts, and conclusions gathered and presented by the OOA and Professor Kyle.  As the OIG Report states, the OOA's audit was conducted "in accordance with Generally Accepted Government Auditing Standards," which required the agency to "obtain sufficient, appropriate evidence to provide a reasonable basis for [its] findings and conclusions based on [the] audit objectives."  Borner Decl. Ex. 1, OIG Rep. at 70.

To meet this standard, the OOA and its retained expert collected considerable evidence, including data that Bear and other firms in the SEC's Consolidated Supervised Entity ("CSE") program submitted to T&M, as well as T&M's internal memoranda and model reviews assessing Bear and the other CSE firms.  *Id.* at vii-viii, 72, 116.  "From this information, Professor Kyle analyzed the firms' financial data, holdings, risk management strategies, [and] tolerance for risk and assessed the adequacy of the firms' filings," focusing in particular on "Bear Stearns' capital, liquidity, and leverage rations, access to secured and unsecured financing, and its compliance with industry and worldwide standards such as the Basel Standards."  *Id.* at vii-viii.  Professor Kyle also "reviewed the adequacy of [T&M's] review of models, scenario analysis, etc[.,] as well as the associated internal risk management controls."  *Id.* at 72.  Based on a thorough analysis of this data and other evidence, the OIG Report sets forth extensive factual findings

regarding T&M and Bear, "including the factors that led to its collapse," and makes 26

recommendations specifically drawn from those findings.  Henken Decl. Ex. 7, Kotz Testimony

at 4-5; Borner Decl. Ex. 1, OIG Rep. at ii, *and see id.* at 13 ("[T]his audit found that it is entirely

possible that Bear Stearns' capital levels could have contributed to its collapse by making lenders

unwilling to provide Bear Stearns the funding it needed.").

In short, there can be no doubt that the OIG Report contains factual findings as required

by Rule 803(8).  *See, e.g.*, *Pentagon Capital Mgmt.*, 722 F. Supp. 2d at 442-43 (concluding that

SEC director's congressional testimony contained factual findings because it described "data

collected in the SEC's investigation, conclusions drawn from the data, and historical facts

regarding actions taken based on the data"); *and see Beech Aircraft Corp. v. Rainey*, 488 U.S.

153, 170 (1988) (holding that Navy report investigating and providing opinion on cause of

airplane crash was admissible because conclusions and opinions are admissible under Rule

803(8) if they are "based on a factual investigation and satisf[y] the Rule's trustworthiness

requirement").

### 2.     *The OIG Report is based on a legally authorized investigation*

The OIG Report also meets the second criterion for admission under Rule 803(8)—

whether the public record was formed pursuant to legal authority—because it is based on an

investigation made pursuant to the SEC OIG's statutory authority.  Under the Inspector General

Act of 1978, 5 U.S.C. app. § 4(a)(1), and its implementing regulations, 17 CFR 200.16a, the SEC

Inspector General is authorized to perform independent and objective investigations and audits

relating to the SEC's programs and operations.  This authority undoubtedly includes the ability

to investigate and review T&M and the SEC's CSE program; therefore the OIG Report is the

result of a legally authorized investigation as required under Rule 803(8).  *See In re MetLife*

*Demutualization Litig.*, 262 F.R.D. 217, 238 (E.D.N.Y. 2009) (stating that legal authority giving

rise to the investigation need only permit the investigation, not require it).  Moreover, the audit leading to the OIG Report was legally authorized insofar as it was "conducted pursuant to Congressional request from Ranking Member Charles E. Grassley of the United States Senate Committee on Finance."  Borner Decl. Ex. 1, OIG Rep. at ii, 54-55.  Accordingly, because it meets the two requirements of Rule 803(8), the OIG Report is "presumptively admissible." *Bridgeway*, 201 F.3d at 143.

### B.  Defendants Failed to Rebut the Presumptive Trustworthiness of the OIG Report

"An authorized report of a government agency is assumed to be trustworthy absent evidence to the contrary."  *Pentagon Capital Mgmt.*, 722 F. Supp. 2d at 442-43 (quoting *Gentile v. County of Suffolk*, 129 F.R.D. 435, 449 (E.D.N.Y. 1990), *aff'd*, 926 F.2d 142, 155 (2d Cir. 1991)).  "Because it is assumed that public officials perform their duties properly, investigative reports encompassed within Rule 803(8)[] are presumed to be trustworthy: the burden is thus placed upon the party opposing the admissibility of the report to demonstrate its lack of reliability."  *Miranda-Ortiz v. Deming*, No. 94 CIV 476 CSH, 1998 WL 765161, at *2 (S.D.N.Y. Oct. 29, 1998) (citing *Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir. 1991)).  Here, Defendants have failed to meet this burden.

#### 1.  The OIG Report was intended to analyze the factors leading to Bear's collapse

Defendants contend that the OIG Report is untrustworthy because it was not intended to analyze the causes of Bear's collapse.  Defs. Mot. to Exclude at 11-12.  That is simply not true. The OIG Report "provided a detailed examination of the adequacy of the Commission's monitoring of Bear Stearns, *including the factors that led to its collapse*."  Henken Decl. Ex. 7, Kotz Testimony at 4-5.  To this end, it made numerous factual findings regarding factors that "could have contributed" to Bear's collapse.  *See, e.g.*, Borner Decl. Ex. 1, OIG Rep. at 13

("[T]his audit found that it is entirely possible that Bear Steams' capital levels could have contributed to its collapse by making lenders unwilling to provide Bear Stearns the funding it needed.").

These factual findings were all made in furtherance of the OOA's congressional mandate to analyze "the adequacy of any reviews [T&M] conducted regarding Bear Stearns."  Borner Decl. Ex. 1, OIG Rep. at 55 (Grassley Letter).  Analysis of T&M's oversight of Bear necessarily required the OOA to review and make factual findings about Bear's financial and management practices.  *Id.* at vii-viii (explaining that Professor Kyle analyzed Bear's "financial data, holdings, risk management strategies, [and] tolerance for risk and assessed the adequacy of [Bear's] filings," focusing specifically on Bear's "capital, liquidity, and leverage ratios, access to secured and unsecured financing, and its compliance with industry and worldwide standards such as the Basel Standards").  The OOA could not have known whether T&M's oversight of Bear's models, for example, was sufficient without also analyzing the models themselves.  *See id.* at viii (explaining that "Professor Kyle analyzed how [T&M] supervised or oversaw Bear Steams' mortgage-backed securities portfolio, its use of models to measure risk, the adequacy of its models, its model review process"), 72 (similar).  Similarly, OOA could not have known whether T&M was encouraging appropriate risk management practices without also looking to whether Bear itself needed better risk management practices.  *See id.* (explaining that "Professor Kyle analyzed how [T&M] supervised or oversaw . . . the relationship between [Bear's] traders and risk management department, and its risk-management scenarios"), 72 (similar).

Defendants make much of the OIG Report's disclaimer that it did not determine the cause of the collapse of Bear.  Defendants' focus in this regard is both inaccurate and irrelevant to their motion.  The OIG Report did not determine the exact cause of Bear's collapse only insofar as it

did not exclude other theories that were "beyond the scope of th[e] audit."  Borner Decl. Ex. 1,

OIG Rep. at 71.  Moreover, even if the OIG Report's purpose is cast as narrowly as Defendants

suggest, many courts—including this one—have admitted public reports notwithstanding the fact

that they may have been prepared for another purpose.  To be admissible, a public report need

not have been prepared for the express purpose for which it is being used in civil litigation.  *See

S.E.C. v. Pentagon Capital Mgmt.*, No. 08 Civ. 3324, 2010 WL 985205, at *2-3 (S.D.N.Y. Mar.

17, 2010) (Sweet, J.) (finding SEC settled orders admissible in injunctive action involving

respondents other than defendants even though orders stated their factual findings "do not bind

others in other proceedings, and [were] made without any admission or denial on the part of the

respondent"); *and see id.*, at *3 ("[T]he fact that an agency or the parties before it provide by rule

or stipulation that the factual findings are not binding and disclaim their viability in other

proceedings does not control their admissibility in federal civil proceedings, wherein the

admissibility of evidence is governed by the Federal Rules of Evidence[.]" (internal quotation

omitted)).

　　　　Furthermore, to prevail in his case, Sherman does not need to prove why Bear collapsed.

He simply needs to prove that Defendants made misrepresentations or omissions that caused his

losses.  Sherman is certainly entitled to use the factual findings from the presumptively

admissible and trustworthy OIG Report as evidence to support his case.

### 2.　　The OIG Report is not anonymous

　　　　Defendants' argument that the OIG Report is untrustworthy because it is "anonymous" is

baseless.  *See* Defs. Mot. to Exclude at 12.  Anonymity is a concern only where the "author is

unidentified and unknown, making it impossible to assess the author's skill or experience."

*Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 778 (9th Cir. 2010) (excluding a report where

it lacked several identifying and authenticating features, and was therefore "untrustworthy").

Here, the OIG Report's author is identified and known.  The OIG Report was prepared by the

OOA, a discrete and specialized office within the SEC.  *See* Borner Decl. Ex. 6, U.S. SEC, OIG

Office of Audits Overview, www.sec.gov/about/offices/oig/inspector_general_audits.shtml.

Furthermore, the Report identifies the expert retained by the OOA and provides extensive

information about his background and qualifications.  Borner Decl. Ex. 1, OIG Rep. at vii, 56-69,

72-73.  The OIG Report is thus readily distinguishable from the report at issue in *Coughlin v.

Tailhook Association, Inc.*, on which Defendants rely, because the report in that case was based

on "interviews of unidentified individuals" where the "investigators used polygraphs, undercover

operations, consensual monitoring and computer analysis with no clear indication of the

qualifications of the persons performing these tasks."  No. CV-S-93-044-PMP (RJJ), 1994 WL

780904, at *1 (D. Nev. Sept. 2, 1994).

### 3.    *The OOA and its expert have the appropriate skill and expertise*

Defendants' argument that the report is untrustworthy because the OIG and OOA lack

skill and expertise is without merit.  *See* Defs. Mot. to Exclude at 13-14.  Courts within the

Second Circuit consider several factors in evaluating whether a government agency has the

requisite skill and expertise such that one of its public reports is presumptively admissible under

Rule 803(8).  Those factors include the agency's experience compiling similar reports, the

experience of the agency personnel specifically involved in compiling the report, and the degree

to which the agency's report is the result of a thorough investigation.  *See*, *e.g.*, *Gentile*, 129

F.R.D. at 452-43 (noting that agency had conducted similar investigations and prepared similar

reports for 30 years, personnel who compiled report had considerable experience, and report was

the result of a thorough review).  In addition, courts have regularly held that government

agencies have sufficient skill and expertise when reporting on a specialized area or issue within

the agency's jurisdiction.  *Bridgeway*, 201 F.3d at 143 (noting that State Department reports

11

were prepared by area specialists); *Papyrus Tech. Corp. v. N.Y.S.E., LLC*, 653 F. Supp. 2d 402, 410 n.8 (S.D.N.Y. 2009) (noting that reports were prepared by independent government agency acting within its statutory authority); *Gentile*, 129 F.R.D. at 452 (noting that subject matter of report fell "squarely within the legislative mandate" of the agency).

The OIG Report and its authors easily satisfy these criteria.  The OIG and OOA are specifically tasked with conducting this type of audit and producing this type of report.   Borner Decl. Ex. 2, U.S. SEC, Office of Inspector General (OIG), www.sec.gov/about/offices/oig/ inspector_general_.shtml; Borner Decl. Ex. 6, U.S. SEC, OIG Office of Audits Overview, www.sec.gov/about/offices/oig/inspector_general_audits.shtml.  Both departments employ skilled auditors, investigators, and other administrative personnel who conduct evaluations pursuant to Generally Accepted Government Auditing Standards ("GAGAS").[3]  Borner Decl. Ex. 6, U.S. SEC, OIG Office of Audits Overview, www.sec.gov/about/offices/oig/inspector_ general_audits.shtml; *and see* Borner Decl. Ex. 1, OIG Rep. at 70 (noting that audit leading to the OIG Report was conducted in accordance with GAGAS).  As discussed above, the OOA met these standards by conducting a thorough and rigorous audit of evidence concerning T&M and Bear.  Furthermore, in accordance with its standard practices, the OOA retained Professor Kyle, "a renowned expert on many aspects of capital markets" to provide technical assistance and

---

[3] GAGAS are promulgated by the Comptroller General of the United States and published by the U.S. Government Accountability Office.  GAGAS "provide a framework for conducting high quality government audits and attestation engagements with competence, integrity, objectivity, and independence."  *See* Government Accountability Office, Government Auditing Standards, No. GAO-07-731G, at 1 (July 2007), *available at* http://www.gao.gov/assets/80/76968.pdf. GAGAS require the staff assigned to an audit to "collectively possess adequate professional competence for the tasks required," including the "technical knowledge, skills, and experience necessary to be competent for the type of work being performed."  *Id.* at 51.  An OIG performing audits pursuant to GAGAS must "establish a system of quality control that is designed to provide the audit organization with reasonable assurance" of high quality, including "an external peer review at least once every 3 years" to ensure compliance.  *Id.* at 55.

guidance.  Borner Decl. Ex. 1, OIG Rep. at vii, 72-73.  Professor Kyle's impressive credentials

speak for themselves.  *See id.* at 56-69.

In short, Defendants' attempt to question the skill and expertise of the agency responsible

for drafting the OIG Report should be quickly rejected.  Indeed, Defendants' own expert, Dr.

Stulz testified as to the OIG's competency and admitted that reliance on the OIG Report is

appropriate.  Henken Decl. Ex. 32, Stulz Tr. at 55:22-56:1, 220:18-25.

### 4.   *The SEC largely embraced the findings of the OIG Report*

Defendants fail to show why some criticism of the OIG Report from within the SEC

renders the OIG Report untrustworthy.  *See* Defs. Mot. to Exclude at 14-15.  First, Defendants

rely on an administrative judge's criticism of a separate report not at issue here.  Specifically, the

criticism highlighted by Defendants concerns OIG Report No. 483, which is the product of a

separate investigation of alleged misconduct by the SEC Miami Regional Office in improperly

closing an enforcement investigation brought against Bear and another entity.  The

administrative judge's criticism does not concern the report at issue in this motion, OIG Report

No. 466-A, which, as discussed above, concerns the SEC's ability to carry out its regulatory

oversight of Bear and other firms in the CSE program.  *Compare* Borner Decl. Exs. 1 and 3.

Moreover, Report No. 483 was not authored by the OOA and therefore any criticism of that

report does not speak to that office's competency.  Put simply, Report No. 483 and any criticism

of it is entirely irrelevant to the trustworthiness of the OIG Report at issue here.

Defendants also emphasize T&M's assertion that the OIG Report "fundamentally flawed."

Borner Decl. Ex. 1, OIG Rep. at 83.  However, Defendants disregard the fact that T&M adopted

20 of 23 recommendations addressed to it and, overall, responsible management adopted 21 of

the OIG Report's 26 recommendations, all of which the SEC Chairman found to be "well-

considered and worthy of support."  *Id.* at ii, 81.  Indeed, even while criticizing the Report, T&M

regularly agreed with OOA's conclusions.  *See, e.g., id.* at 86 (noting that T&M "concurs with [the OOA's] recommendation, even though [it] believe[s] it is based on a fundamentally flawed understanding of the Bear Stearns crisis").  As the OIG noted in response to T&M, "while [T&M'] commentary asserts that the report [is] fundamentally flawed in all aspects, it provides only a few examples of actual statements being inaccurate, all of [which] are relatively minor . . . ." *Id.* at 117.  As a result, the OIG concluded that even if T&M's criticisms were true, they had "no impact on the overall findings and conclusions of the report." *Id.*  The Court should not exclude the OIG Report on the basis of a small amount of unsubstantiated criticism by interested managers when in fact the Report was widely embraced.

### 5.    Defendants can introduce their own evidence to rebut the factual findings of the OIG Report

Contrary to Defendants' argument, the OIG Report should not be excluded simply because the OIG did not hold a hearing at which Bear could cross examine its authors.  *See* Defs. Mot. to Exclude at 15-16.  "Any lack of an adversarial hearing with cross-examination is not sufficient to rebut the presumption of trustworthiness." *In re MetLife Demutualization Litig.*, 262 F.R.D. at 239 (denying motion to exclude order and opinion of New York Superintendent of Insurance,  finding insurance company's demutualization was in compliance with New York insurance law, where the responsible agency drew factual conclusions based on statements and analyses of its own legal, financial, and actuarial advisors, as well as those of the insurance company); *and see Bridgeway*, 201 F.3d at 143 (noting that lack of an administrative hearing "is not determinative by itself").  Defendants will have the ability at trial to present their own evidence to rebut the observations in the OIG Report.  Furthermore, Defendants criticize Sherman for not deposing Professor Kyle even though they are the ones who call his expertise and methodology into doubt.  *See* Defs. Mot. to Exclude at 10.  Defendants had ample

14

opportunity to depose Professor Kyle.  Indeed, Defendants, who once opposed such a deposition, should not now be heard to complain that they lack the means to assess the Report's methodology.

## II.   DEFENDANTS HAVE FAILED TO SHOW THAT THE OIG REPORT SHOULD BE EXCLUDED AS PREJUDICIAL UNDER RULE OF EVIDENCE 403

Defendants contend that the OIG Report should be excluded as prejudicial under Federal Rule of Evidence 403.  Defs. Mot. to Exclude 17-19.  Although the admission of the OIG Report might make it more difficult for Defendants to rebut the inadequacy of Bear's financial and management practices and Defendants' disclosures thereof, no *prejudice* is shown as that term is used in Rule 403.  *See United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) ("Evidence is prejudicial only when it tends to have some adverse effect upon a defendant *beyond* tending to prove the fact or issue that justified its admission into evidence." (emphasis added)).  Here, the probative value of the OIG Report is supported by other evidence gathered in discovery, and thus it should not be excluded under Rule 403.  *Cf. Paolitto v. John Brown E. & C. Inc.*, 151 F.3d 60, 65 (2d Cir. 1998) (affirming the exclusion of a state agency's findings and investigative file under Rule 403, despite the availability of the Rule 803(8) exception, because many of the agency's findings were undercut by plaintiff's evidence).

Additionally, any risk of prejudice can be mitigated by protective measures.  For example, in *Gentile v. County of Suffolk*, 129 F.R.D. 435 (E.D.N.Y. 1990), the court admitted evidence from a government report notwithstanding the expressed concern that "the jury may be influenced by the official character of the report to afford it greater weight than it is worth."  *Id.* at 460 (internal alterations omitted).  The court identified three protective measures that mitigated the risk of 403 prejudice: (i) "accompan[ying] the reading of the factual findings with limiting instructions"; (ii) permitting the defendant "to introduce findings of its own from the

15

report"; and 3) "refusing to admit the report in evidence so that it could be taken into the jury room where it might continue to speak." *Id.* at 461.  The *Gentile* court concluded that the "trustworthiness and probative value of the . . . report, considered in conjunction with the limiting instructions given by the court, other protections afforded defendants and the opportunity defendants were given to produce evidence in derogation of the report, adequately protected against the risk that the excerpts read to the jury may have had an unfair prejudicial effect." *Id.*; *see also United States v. Nelson*, 365 F. Supp.2d 381, 391 (S.D.N.Y. 2005) (concluding that limiting instruction would be sufficient to mitigate any undue weight that the jury might afford the administrative finding).

Defendants rely on the Second Circuit's decision in *City of New York v. Pullman*, 662 F.2d 910 (2d Cir. 1981), where an interim government report was deemed inadmissible because it was incomplete, its theories had not been tested, and presenting it to the jury "would not have been commensurate with its actual reliability." *Id.* at 915.  There can be no similar concerns here, where the OIG Report is final, it was formulated in accordance with GAGAS and vetted by an expert with extensive technical expertise and experience, and its recommendations are regarded as "well-considered."  Should the Court have any concern about possible misuse of the Report, careful jury instructions can sufficiently mitigate the risk of any such danger.

Defendants also argue that admission of the OIG Report will delay the trial and require inquiry into collateral issues because the OIG Report is untrustworthy.  Defs. Mot. to Exclude at 17-18.  However, as shown above, the document is trustworthy, so there will be no unnecessary delay due to Sherman's use of the OIG Report.

Finally, Defendants argue that Sherman misuses the OIG Report in the Complaint.  *Id.* at 18-19.  This argument misses the mark given that this case is now at the summary judgment

16

stage where the evidence is no longer tethered to the Complaint.  Should the case proceed to

trial, Defendants will have ample opportunity to attempt to persuade the jury to reject the OIG

Report's findings.

## CONCLUSION

The Court should deny Defendants' motion to exclude the OIG Report and should permit

Sherman's use and reference of the OIG Report in support of his opposition to Defendants'

motion for summary judgment or for any other permissible purpose.


Dated:___October 13, 2015___                    BOIES, SCHILLER & FLEXNER LLP


                                                _____
                                                Philip C. Korologos
                                                BOIES, SCHILLER & FLEXNER LLP
                                                575 Lexington Avenue, 7th Floor
                                                New York, NY 10022
                                                Phone: (212) 446-2300
                                                Fax:    (212) 446-2350

                                                Richard B. Drubel
                                                Matthew J. Henken
                                                BOIES, SCHILLER & FLEXNER LLP
                                                26 South Main Street
                                                Hanover, NH 03755
                                                Phone: (603) 643-9090
                                                Fax:    (603) 643-9010

                                                George A. Zelcs
                                                KOREIN TILLERY LLC
                                                205 North Michigan Plaza, Suite 1950
                                                Chicago, IL 60601
                                                Phone: (312) 641-9750
                                                Fax:    (312) 641-9751

                                                Stephen M. Tillery
                                                Douglas R. Sprong
                                                KOREIN TILLERY LLC
                                                505 North 7th Street, Suite 3600

17

St. Louis, MO 63101
Phone: (314) 241-2844
Fax:    (314) 241-3525

*Attorneys for Plaintiff*