# Exhibit 88

```
                                                              Page 1
 1

 2        IN THE UNITED STATES DISTRICT COURT

 3       FOR THE SOUTHERN DISTRICT OF NEW YORK

 4    ---------------------------------X
      IN RE THE BEAR STEARNS COMPANIES,
 5    INC. SECURITIES, DERIVATIVE,
      AND ERISA LITIGATION,         MASTER FILE NO.:
 6                                  08 MDL No. 1963(RWS)
         This Document Relates To:
 7       Securities Action
         NO. 08 Civ. 2793(RWS)
 8    ---------------------------------X
      BRUCE S. SHERMAN,
 9
                    Plaintiff,
10                                  Index No.:
                  VS.               09 CV 8161(RWS)
11
      BEAR STEARNS COMPANIES INC.,
12    JAMES CAYNE, WARREN SPECTOR and
      DELOITTE & TOUCHE LLP,
13
                    Defendants.
14    ---------------------------------X

15          **C O N F I D E N T I A L**
                VIDEOTAPED DEPOSITION
16                       OF
                   MATTHEW TANNIN
17          Thursday, September 18, 2014
               One Battery Park Plaza
18               New York, New York

19
      Reported by:
20    AYLETTE GONZALEZ, RPR, CLR, CCR
      JOB NO. 84716
21

22

23

24

25
```

Page 86

CONFIDENTIAL - MATTHEW TANNIN

2  A. Not including Everquest?
3  Q. "Not including Everquest."
4     Everquest is yet to come by KLIO,
5  Circ?
6     MR. HURWITZ: Objection to the
7  form.
8  A. Well, I don't believe, again, to
9  the best of my recollection, that Bear Stearns
10 was a counterparty to the KLIO transaction or
11 the Circ transaction. Your initial question
12 about --
13 Q. I was asking about the High Grade
14 Fund and who it was trading with.
15    MR. HURWITZ: I'm sorry, can we --
16 it's your transcript, but first of
17 all, can you not interrupt the
18 witness?
19    And also second, can we just ask
20 one question at a time so we have a
21 clear record about what question the
22 witness is answering?
23    MR. ZELCS: I -- I appreciate and
24 encourage any recommendations you
25 have, so thank you.

Page 87

CONFIDENTIAL - MATTHEW TANNIN

1  Q. Go ahead.
2  A. Why don't we -- why don't you ask
3  the question again.
4  Q. Better question.
5     We talked earlier about the
6  transactions that the High Grade Fund had
7  entered into with various Bear entities, you
8  recall?
9  A. Yes.
10 Q. Okay. And I was trying to identify
11 the various Bear entities that the High Grade
12 Fund transacted with?
13 A. Yes.
14 Q. I threw out the name, the
15 broker-dealer, Bear Stearns & Company, and you
16 said yes, right?
17 A. Yes.
18 Q. Threw out the prime -- prime
19 broker, which is Bear Stearns Securities
20 Corporation, and I believe you said yes,
21 right?
22    MS. BEATTIE: I actually don't
23 think he -- he didn't answer that
24 question.

Page 88

CONFIDENTIAL - MATTHEW TANNIN

1  Q. Go ahead, answer it now.
2     MS. BEATTIE: So why don't you --
3  A. I believe the funds did transact
4  with the prime broker.
5  Q. Okay. I was probably anticipating
6  it, but we're there now.
7     What other Bear affiliates did the
8  funds transact with other than the ones that
9  I've mentioned?
10 A. I'm not aware -- I don't -- I don't
11 recall an entity other than the broker-dealer
12 and the prime broker.
13 Q. Okay. And when we talk about
14 transacting with those entities, we're
15 literally talking about thousands of
16 transactions, correct?
17    MS. BEATTIE: Objection.
18 A. I believe that that's true, yes.
19 Q. There came a point in time when --
20 because of the affiliated nature of the Bear
21 entities that were counterparties to
22 transactions with the High Grade Fund, that
23 there were issues raised about regulatory
24 reporting and ultimately Bear band any such

Page 89

CONFIDENTIAL - MATTHEW TANNIN

1  further related party transactions, correct?
2     MS. BEATTIE: Objection.
3     MR. HURWITZ: Objection to the
4  form.
5  A. I don't believe that that's
6  accurate.
7  Q. Okay. What's not accurate about
8  that?
9  A. My recollection -- to the best of
10 my recollection, there was a -- Bear Stearns
11 Asset Management decided to put a temporary
12 moratorium on trading with Bear Stearns
13 entities.
14 Q. When did the temporary moratorium
15 start?
16 A. I believe it was in August or
17 September of 2006.
18 Q. Are we in sync that it preceded the
19 sale to Ramparts/Everquest?
20 A. I believe so.
21 Q. Okay. Did the temporary band ever
22 end before the funds failed?
23 A. Yes.
24 Q. When did it end?

## Page 90

CONFIDENTIAL - MATTHEW TANNIN

A. In March or April of 2007.

Q. Okay. So in the last 60 days before the High Grade and Enhanced Funds were liquidated, they were back doing transactions with Bear affiliates including the broker-dealer and the prime broker, correct?

MS. BEATTIE: Objection.

A. To the best of my recollection, there were repo transactions primarily. There may have been other positions traded, but I -- I don't recall, but my recollection is that it was primarily repo.

Q. And -- and the repo transactions were essentially overnight transactions where Bear was financing either the positions that the fund held or was seeking to -- to -- to take, correct?

MS. BEATTIE: Objection.

A. There were repo transactions; I don't recall sitting here today what the term of those repo transactions were.

Q. Can we agree that they were financing transactions?

A. Yes.

## Page 91

CONFIDENTIAL - MATTHEW TANNIN

Q. Bear was advancing money for the fund, using fund assets as collateral, we're not sure as we sit here today what the term in terms of duration of those individual repo transactions was, correct?

A. That's to the best of my recollection.

Q. All right. Now, were you involved in those transactions, the repo transactions?

A. No, I was not.

Q. Who -- who -- who was involved in those transactions from the side of the fund that you were the COO of?

A. Joan Pusateri would have been primarily responsible for executing those trades, she had people who worked for her. And I'm sure Ralph -- to the best of my recollection, Ralph was also aware of which positions were being repo'd with who.

Q. Okay. Would Joan have been responsible for negotiating the terms of the repo transactions?

MS. BEATTIE: Objection.

A. To the best of my recollection,

## Page 92

CONFIDENTIAL - MATTHEW TANNIN

that would have been -- she may have conveyed to Ralph what -- what the terms were or what the suggested terms were where Ralph may have agreed or proposed other -- other terms. But to the best of my recollection, Joan didn't have -- she didn't negotiate terms herself.

Q. Would the repo transactions have been with the broker-dealer or the prime broker or someone else?

A. I don't -- I don't know the difference in terms of which entity would have been.

Q. You don't know who was on the other side of those transactions with you, which entity, other than it was a Bear entity?

A. That's correct.

Q. Would you know who was negotiating with your fund, whether it be with Joan or Ralph, in terms -- the terms of such repo transactions on behalf of whatever that Bear entity was that was the counterparty on the repo transaction?

A. I don't recall.

Q. Okay. Did you ever know who that

## Page 93

CONFIDENTIAL - MATTHEW TANNIN

was?

A. I knew -- I'm not sure who on the repo desk, you know, I'm not sure with which person the terms were negotiated.

Q. Did you ever have any discussions with Tom Marano about those repo transactions the last 60 days before the funds went down?

A. I don't believe that I ever had conversations with Tom Marano, no.

Q. Do you know whether Ralph or Joan did?

A. I don't recall.

Q. Okay. Did you ever have any conversations with Warren Spector about those repo transactions?

A. I did not myself have any conversations with --

Q. Do you know whether Ralph or Joan did?

A. I don't know.

Q. Okay. When did you first begin to deal with Tom Marano?

MS. BEATTIE: Objection.

A. I don't recall whether it was in --

ERRATA SHEET
FOR THE DEPOSITION OF MATTHEW TANNIN
on September 18, 2014
*In re the Bear Stearns Companies Inc. Securities, Derivative, and ERISA Litigation*
08-MDL-1963 (RWS)

The Witness, MATTHEW TANNIN, states he wishes to correct the following errors in his testimony as transcribed and make the following changes:

| PAGE | LINE(S) | ORIGINAL | CORRECTION | REASON |
|---|---|---|---|---|
| 13 | 10 | company | Company | Transcription Error |
| 20 | 11 | 1990 -- | DELETE | Correction |
| 23 | 18 | CDO | CDOs | Correction |
| 24 | 14 | told | hold | Transcription Error |
| 26 | 8-9 | high grade, is that the high -- same high grade | High Grade, is that the High -- same High Grade | Transcription Error |
| 27 | 3 | offshores at | offshore or | Correction |
| 27 | 18-20 | there was master funds that was at Cayman Island entities, | there was a master fund that was a Cayman Island entity | Correction |
| 38 | 24 | of | for | Correction |
| 44 | 2 | this | the | Correction |
| 51 | 20 | Cummins | Cummings | Transcription Error |
| 51 | 24 | guy, Sal's? Did that have | guy, Van Solkema? Did he have | Correction |
| 69 | 6 | funds? Were | funds, were | Punctuation |
| 80 | 2 | with | in | Correction |
| 80 | 10 | believe | believe, | Punctuation |
| 83 | 5 | knot. | "not." | Transcription Error and Punctuation |
| 83 | 7 | come one. | come on | Transcription Error |
| 85 | 25 | SBV | SPV | Transcription Error |
| 86 | 4 | by | like | Correction |
| 88 | 25 | band | banned | Transcription Error |
| 89 | 22 | band | ban | Transcription Error |
| 92 | 12 | entity would | entity it would | Correction |
| 94 | 4 | in | if | Transcription Error |
| 95 | 2 | the fund involved | that the fund was involved in | Correction |
| 96 | 7 | year, may | year, it may | Correction |

| PAGE | LINE(S) | ORIGINAL | CORRECTION | REASON |
|---|---|---|---|---|
| 105 | 4 | Bear | Bear Stearns | Correction |
| 105 | 19 | of | with | Correction |
| 112 | 12 | mark | marked | Correction |
| 130 | 25 | waive | waive, | Punctuation |
| 141 | 23 | could | did | Correction |
| 142 | 24 | or | for | Transcription Error |
| 144 | 4 | band | ban | Transcription Error |
| 144 | 9 | band | ban | Transcription Error |
| 144 | 21 | and | in | Correction |
| 145 | 17 | answer's | answer is | Transcription Error |
| 156 | 5 | any of | DELETE | Transcription Error |
| 161 | 8 | on my -- my | unlike my | Transcription Error |
| 171 | 12 | funds | funds, | Punctuation |
| 175 | 23-24 | reported me | reported to me | Correction |
| 195 | 21 | indirectly or | indirectly were | Transcription Error |
| 196 | 11 | on | in | Transcription Error |
| 204 | 12 | ABS, | ABS | Punctuation |
| 205 | 19 | there | it | Correction |
| 207 | 15 | we had subsequently | we subsequently | Correction |

_____
MATTHEW TANNIN

Subscribed and sworn to before me
this 5th day of November, 2014.

_____
Notary Public

My Commission Expires: Sept 11th 2019

FEONA KHAN
Notary Public, State of New York
No. 01BA6152435
Qualified in Queens County
Commission Expires Sept 11 2019.